UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARMEN KEATING, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 3:12-cv-514 ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Carmen Keating appeals the Social Security Administration's decision to deny her application for disability insurance benefits. An administrative law judge found that Keating was not disabled within the meaning of the Social Security Act. Keating raises a number of challenges to this determination, but I conclude that the ALJ's decision was supported by substantial evidence. The decision of the ALJ will therefore be affirmed.

## BACKGROUND

Readers looking for a detailed discussion of Keating's medical record are directed to the detailed summaries in the ALJ's decision [R. 12-19] and in Keating's opening brief [DE 15 at 7-16]. Rather than simply reiterating those summaries, I will give a brief overview of the history of Keating's health issues.

Keating applied for Supplemental Security Income in on December 2, 2009 with an alleged onset date of that same day. Keating alleged disabilities included degenerative disk disease, osteoporosis, degenerative arthritis, depression, foot drop syndrome, back pain, leg pain,

and tingling left foot. She alleged that these impairments affected her ability to walk, sit, stand, and lift.

Keating's disability claim was denied initially on March 16, 2010, and upon reconsideration on May 3, 2010. Keating requested a hearing, which took place on May 5, 2011. Keating's testimony at this hearing also reflected her health difficulties. She testified to having difficulty walking, standing, sitting, balancing, and breathing. A vocational expert also testified as to the various jobs available when given different hypotheticals by the ALJ. A second hearing took place a few months later on August 5, 2011. The purpose of this hearing was to allow Dr. Richard A. Huston, a board-certified orthopedic surgeon, to testify as an impartial medical expert after he had reviewed the record. Another vocational expert also testified at that hearing.

The ALJ issued a decision denying benefits on October 14, 2011. [R. 10-21.] The ALJ employed the standard five-step analysis. At step one, the ALJ confirmed that Keating had not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Keating suffered severe impairments of a spine disorder, but that her impairments of osteoporosis, sleep apnea, and depression were non-severe and that there were insufficient clinical signs to establish fibromyalgia as a medically determinable impairment. At step three, the ALJ found that Keating's conditions did not satisfy any listed impairment. At step four, in analyzing Keating's residual functional capacity, the ALJ found that Keating could perform sedentary work with the following qualifications: she can lift/carry/push/pull ten pounds occasionally and less than ten pounds frequently; stand/walk for 2 hours in an 8- hour day; sit for 6 hours in an 8-hour day; be allowed at her discretion to stand up for 5 minutes at the work station; occasionally balance, stoop, crouch, crawl, kneel, and climb ramps or stairs; never climb

ladders, ropes, or scaffolds; and avoid temperature extremes, high levels of humidity, vibration, unprotected heights, and dangerous moving machinery. At step five, the ALJ found that Keating could not perform past relevant work but that there were a sufficiently significant number of jobs in the national economy that she could perform.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Keating timely sought review of that decision by filing this case.

## DISCUSSION

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* In other words, the ALJ's decision, if supported by substantial evidence and reached under the correct legal standard, will be upheld even if reasonable minds could differ as to the appropriate conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). It is not my job to re-weigh evidence, choose among conflicting versions of events, decide questions of credibility, or substitute my own judgment for the ALJ's. *Young*, 362 F.3d at 1001.

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments

3

must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The first challenge that Keating makes to the ALJ's decision is that he failed at Step 2 of the analysis to properly analyze the severity of her foot drop, fibromyaglia, and depression. But this argument is unavailing because the ALJ concluded at Step 2 that she did have one severe condition – *i.e.*, disorder of the spine. By making that finding, the ALJ was then required to move on to Step 4 and to consider the totality of Keating's impairments, both severe and non-severe. This is precisely what the ALJ did. [R. 13-14.] Under these circumstances – where there is at least one severe impairment found at Step 2 and both the severe and non-severe impairments are considered at Step 4 – a Step-2 challenge is unwarranted. Here's how the Seventh Circuit recently put it: "Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment. Here, the ALJ categorized two impairments as severe, and so any error of omission was harmless." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (emphasis in original and internal citations omitted); *see also Henke v. Astrue*, 498 Fed. App'x. 636, 640 (7th Cir. Dec. 21, 2012) ("Because the ALJ proceeded beyond Step 2, and considered Henke's severe and non-severe impairments at Step 4, any purported error in the Step–2 severity determination was harmless.").

Rather than a Step-2 challenge, Keating's arguments regarding the severity of her foot drop, fibromyaglia, and depression are more properly construed as challenges to the ALJ's Step-4 analysis regarding her residual functional capacity. In the context of Step 4, Keating also

4

challenges the ALJ's determination of her credibility and the ALJ's reliance on the opinion of Dr. Hutson rather than the opinions offered by some of her treating physicians.

I find that none of these challenges are persuasive and that the ALJ's Step-4 analysis is supported by sufficiently substantial evidence. First, Keating challenges the ALJ's assessment regarding the severity of her depression, foot drop, and fibromyalgia, but these assessments were supported by substantial evidence. With respect to Keating's claims of depression, the ALJ correctly noted that Keating had not been regularly or significantly treated for any mental impairment, nor did she mention any limiting mental impairment during either hearing. [R. 13.] While Keating had been prescribed an antidepressant by her family doctor, she never consulted with a mental health professional for her depression and the ALJ found that the effects of the depression on Keating's everyday activities was mild. [R. 13-14.] This finding was well supported by the ALJ, *id.*, and the State agency psychologists who reviewed the record concurred that her psychological limitations were not severe. [R. 556.] Under these circumstances, it was reasonable for the ALJ to find that Keating did not have any mental limitations.

Similarly, the ALJ reviewed the medical record regarding Keating's allegations of foot drop. First, the ALJ noted that Keating went for testing for her foot drop complaint but "the study was consistent[ly] negative for any organic etiology to explain her foot drop." [R. 17.] The ALJ went on to note that both the medical records and the findings and testimony of Dr. Hutson (the independent expert) were "inconsistent with foot drop symptoms," and thus Keating's "continued complaints of foot drop absent any medical explanation for the same,

negative[ly] affects her overall credibility." [R. 18.] This was a perfectly justifiable conclusion to reach and was supported by substantial evidence.

The ALJ also reviewed the evidence of Keating's allegations regarding fibromyalgia. Keating points to one exam on February 1, 2010 where her doctor noted that fibromyalgia could be an explanation for some diffuse pain. [R. 476.] Another doctor also diagnosed fibromyalgia at visits on April 19, 2010 and July 12, 2010. [R. 615-617, 623-624.] The ALJ, however, relied on the expertise of Dr. Hutson: "Dr. Hutson also explained that while the record indicates a diagnosis of fibromyalgia, there are no clinical signs that would support this to be a medically determinable impairment." [R. 12.] This reliance on the opinion of Dr. Hutson was justified, given his expertise and the fact that he reviewed the entire record. As the ALJ put it: "I have adopted Dr. Hutson's assessment because I find his review of the evidence is most consistent with the objective medical evidence. Moreover, Dr. Hutson's medical specialty is in the field of orthopedic surgery which is the most relevant specialty pertaining to claimant's impairments." [R. 18.] *See also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation. The fact that these physicians reviewed the entire record strengthens the weight of their conclusions."). Keating argues that a rheumatologist is the appropriate medical specialist to diagnose and treat fibromyalgia, and that it was improper for the ALJ to rely on the opinion of an orthopedist. But this is not a situation where the ALJ was *rejecting* the opinion of a rheumatologist in favor of an orthopedist. *See*, *e.g.*, *Sullivan v. Astrue*, 2012 WL 3930342, at *2 (C.D. Cal. 2012) ("The ALJ erred when he rejected the treating rheumatologist's opinion that Plaintiff had fibromyalgia because there were no objective signs

6

and relied, instead, on the examining orthopedist's opinion."). Here, there was no evidence from any rheumatologist – neither of the doctors who noted the possibility of fibromyalgia were rheumatologists – and thus reliance on the orthopedist who had full review of the record was justified. *See also Huffaker v. Metropolitan Life Ins. Co.*, 271 Fed. Appx. 493, 501-02 (6th Cir. 2008) ("Huffaker argues that Dr. Uzzle, a doctor of orthopedic medicine, is unqualified to diagnosis fibromyalgia. She argues that a rheumatologist should instead have conducted the examination, because fibromyalgia is a rheumatological condition. But Huffaker cites no factual or legal authority for the proposition that only a rheumatologist may diagnose fibromyalgia.").

Keating also challenges the ALJ's rejection of the conclusion by one of her treating physicians (Dr. Brkaric) that Keating was likely permanently disabled. I agree with Keating that it was a mistake for the ALJ to reject Dr. Brkaric's opinion on the grounds that "he did not build a longitudinal treating relationship" with Keating. [R. 19.] In fact, Dr. Brkaric had treated Keating for over a year and performed surgery on her, which clearly qualifies as "longitundinal." Nevertheless, this error was harmless because, as the ALJ also noted, Dr. Brkaric's conclusion as to Keating's disability is not controlling on the ALJ. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability.").

Keating also argues that the ALJ should have accounted for her difficulty walking and her use of a cane. First, Dr. Hutson testified that there was no evidence that a cane was medically necessary, and, as already noted, the ALJ was justified in relying on that opinion. *Flener*, 361 F.3d at 448. Moreover, even though the ALJ justifiably concluded that the medical

7

evidence did not support Keating's need for a cane, nevertheless he still accounted for Plaintiff's difficulty walking and standing by limiting her to sedentary work: "Although not fully supported by the objective medical evidence of record, I have limited the claimant to work that is primarily performed in the seated position." [R. 18.] This conclusion was supported by substantial evidence.

## CONCLUSION

The ALJ provided legitimate reasons for his opinion. While reasonable minds could differ, the only issue is whether the conclusion reached by the ALJ was supported by substantial evidence, and it was. Accordingly, the decision of the ALJ is **AFFIRMED**.

**SO ORDERED**.

ENTERED: April 25, 2013.   s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT